Kevin J. Simon, Esq. (WSB No. 6-4459)
1031 South Bluff Street, First Floor
Post Office Box 910645
St. George, UT 84791
Telephone: (435) 634-8880

*Attorneys for Plaintiff XL Specialty Insurance Company, as subrogee of Club Bo A36, LLC*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 06 2022
5:01 AM
Margaret Botkins, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, a Delaware Corporation, as subrogee of Club Bo A36, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ALPINE AIRPARK ASSOCIATION, INC., a Wyoming Corporation; FUNK HOLDINGS, LTD., a Calgary, Alberta, Canada Company,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 22-CV-254<br><br>Judge Skavdahl<br><br>(JURY DEMANDED) |

Plaintiff XL Specialty Insurance Company, as subrogee of Club Bo A36, LLC ("Plaintiff" or "XL"), by and through its attorney, hereby files this Complaint against Defendants Alpine Airpark Association, Inc. and Funk Holdings, Ltd. (collectively "Defendants"), and alleges as follows:

1

## PARTIES

1. Club Bo A36, LLC ("Club Bo") is a limited liability company organized under the laws of Montana.

2. Club Bo at relevant times had two members, Franceso Chierici and Christopher Rimer, both of whom were residents of the State of California.

3. Plaintiff XL is a Delaware Corporation with its principal offices in Stamford, Connecticut.

4. XL is an insurer that at relevant times provided property insurance coverage to Club Bo for a Beech Bonanza A36-TC aircraft (the "Aircraft").

5. Defendant Alpine Airpark Association, Inc. ("Association") is a Wyoming Corporation and is based in Wyoming.

6. The Association leases property near Alpine, Wyoming, where a private, residential airpark and common areas of associated private hangers and residences are located (the "Airpark").

7. Defendant Funk Holdings, Ltd. ("Funk"), is a Calgary, Alberta, Canada Company.

8. Funk agreed with the Association and others to install, maintain, repair, and replace electronic access gates meeting current Federal Aviation Administration standards at the Airpark, to restrict vehicles from but allow aircraft onto the property.

## JURISDICTION AND VENUE

9. Jurisdiction is based on 28 U.S.C. section 1332(a)(1) because there is complete diversity of citizenship between Plaintiff, on the one hand, and the Defendants, on the other hand, and because the amount in controversy exceeds the $75,000.00 jurisdictional limit of this Court.

10. Venue for this action in the District of Wyoming is proper pursuant to 28 U.S.C. sections 1391(a)(1) and (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District.

## THE INCIDENT

11. At relevant times Club Bo owned the Aircraft.

12. On July 4, 2019, the Aircraft, piloted by Mr. Chierici, was slowly taxiing toward a residence owned by a member of the Airpark when a large metal gate on the taxiway suddenly and unexpectedly rose from the taxiway just in front of the Aircraft's nose wheel, causing the nose wheel to collapse and damaging the nose wheel and other aircraft components.

13. The collapse of the nose wheel in the collision with the gate caused the propeller to strike the taxiway causing damage to the propeller and resulting in a sudden seizing of the Aircraft's engine, thus resulting in permanent and irreversible mechanical damage to the engine necessitating a complete overhaul.

14. The nose of the Aircraft came to rest on top of the gate just aft of the lower antenna, causing damage to the nose gear, nose gear doors, lower antenna, and skin of the lower fuselage on the Aircraft.

15. The accident occurred with Mr. Chierici's entire family on board, including his wife and two children.

16. Mr. Chierici is an experienced and accomplished pilot.

17. There was no warning provided before the gate unexpectedly rose.

18. There was no Notice to Airmen (NOTAM) or remarks on the Alpine Airpark information page that mention the presence or potential presence of the gate.

19. The gate was not depicted or described in the taxiway diagram.

20. There were no signs or lights warning of the gate from the taxiway.

21. There were no optical or pressure sensors present to prevent the gate from suddenly rising as an aircraft approached.

22. There was no reasonable way for Mr. Chierici to avoid the collision with the gate.

23. The gate is a vertical steel barrier that rises straight up from the taxiway.

24. The purpose of the gate was apparently to separate portions of the Airpark to prevent unauthorized automobiles or other aircraft access to the taxiway at particular times.

25. The gate was intended to be controlled by transmitter controls akin to garage openers owned by members of the Airpark.

26. Mr. Chierici's family was visiting friends at the time of the incident.

27. The Aircraft was to be parked for the weekend until the family flew home.

28. The Aircraft was to be used for the family to travel to and from the Airpark.

29. The Aircraft was not to be used for any purpose while parked at the Airpark.

## **THE AIRPARK**

30. Plaintiff is informed and believes, and thereon alleges, that members of the Airpark paid fees and/or dues for upkeep and maintenance of common areas and infrastructure such as the gate.

31. Plaintiff is informed and believes, and thereon alleges, that the value of individual residences at the Airpark derived in part from access for residents and invitees to common areas and infrastructure such as the gate.

32. Plaintiff is informed and believes, and thereon alleges, that members of the Airpark considered common areas and infrastructure in determining whether to purchase, lease, or otherwise pay to live at and/or use the Airpark.

33. The access gate was in a residential area and was to be used by residents of the Airpark and their guests.

34. Plaintiff is informed and believes, and thereon alleges, that Funk installed and/or maintained the access gate, and/or engaged others to do so.

35. Plaintiff is informed and believes, and thereon alleges, that the Association had substantial control of the Airpark's common areas and infrastructure, including the access gate, pursuant to the Third Amendment and Complete Restatement of the Alpine Airpark Association Declaration of Covenants, Conditions, Restrictions, Reservations, Easements, Liens and Charges.

## THE INSURANCE CLAIM AND PAYMENTS

36. Club Bo made an insurance claim to XL for property damage incurred to the Aircraft in the gate incident.

37. Pursuant to the terms and conditions of its insurance Policy, XL paid $164,640.80 to or on behalf of Club Bo for damage to the Aircraft.

38. XL is subrogated to the rights of Club Bo to the extent of its payment.

39. Plaintiff is informed and believes, and thereon alleges, that Club Bo incurred additional losses that were not covered by its insurance.

## FIRST CAUSE OF ACTION
### (Negligence – Property Damage)

40. Plaintiff incorporates all preceding allegations above as if fully restated here.

41. Defendants had a duty to plan, design, install, test, maintain, inspect, supervise and/or operate the access gate at the Airpark, and related equipment and/or property, to ensure the safety of persons and property on the premises, including residents, invitees, and their aircraft.

42. Defendants failed to exercise ordinary care in the planning, design, installation, testing, maintenance, inspection, supervision, and/or operation of the access gate at the Airpark, and/or related equipment and/or property.

43. As a result of Defendants' failure to exercise ordinary care, Club Bo and Plaintiff incurred damages as alleged above.

44. Plaintiff's damages are a legal and proximate result of Defendants' negligent conduct.

## JURY DEMAND

Plaintiff demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment, including the following against Defendants:

1. For monetary damages to Plaintiff from the damages to the Aircraft and its insurance payments as a direct and proximate result of the incident.

2. Pre- and post-judgment interest on all damages as allowed by law.

3. Such other and further relief as this Court deems reasonable and just.

DATED this 6th day of December, 2022.

Kevin J. Simon
*Attorneys for Plaintiff*
*XL Specialty Insurance Company*

**Plaintiff's Address:**

XL Specialty Insurance Company
70 Seaview Avenue
Stamford, CT 06902

8560305.1